UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ALEJANDRO RAMIREZ, | ) | 1:08-CV-01743 JMD HC |
| | ) | |
| Petitioner, | ) | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |
| | ) | |
| v. | ) | |
| | ) | ORDER DIRECTING CLERK OF COURT TO ENTER JUDGEMENT |
| ROBERT HERNANDEZ, | ) | |
| | ) | |
| Respondent. | ) | ORDER DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY |
| | ) | |

Alejandro Ramirez ("Petitioner") is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL HISTORY**

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation pursuant to a jury verdict in January 2005, finding Petitioner guilty of voluntary manslaughter (Cal. Penal Code § 187(a)). (Answer at 1). The jury further found that Petitioner had committed the crime for the benefit of a criminal street gang (Cal. Penal Code § 186.22(b)(1)) and was an active participant in a criminal street gang(Cal. Penal Code § 186.22(a)). (Answer at 1; Pet. at 2). Petitioner was sentenced to an aggregate prison term of sixteen years and eight months. (Answer at 1).

Petitioner appealed his conviction to the California Court of Appeal, Fifth Appellate District. (*See* Lod. Doc. 1). The appellate court issued a reasoned opinion on November 13, 2006, affirming

1 Petitioner's conviction and enhancements. (*See* Lod. Doc. 3).

2   Petitioner then filed a petition for review to the California Supreme Court, which the court
3 denied. (*See* Lod. Docs. 4, 5). Petitioner also filed a petition for writ of habeas corpus to the
4 California Supreme Court. (*See* Lod. Doc. 6). The California Supreme Court summarily denied the
5 petition.

6   On October 31, 2008, Petitioner filed the instant federal petition for writ of habeas corpus in
7 the Southern District of California. The case was transferred to this district on November 14, 2008.
8 (Court Doc. 3).

9   On March 18, 2009, Respondent filed a response to the petition.

10 Consent to Magistrate Judge Jurisdiction

11   On March 9, 2009, Petitioner consented, pursuant to Title 18 U.S.C. section 636(c)(1), to
12 have a magistrate judge conduct all further proceedings, including the entry of final judgment.
13 (Court Doc. 18). Respondent had previously consented to the jurisdiction of a magistrate judge on
14 February 23, 2009. (Court Doc. 14). On March 11, 2010, the case was reassigned to the
15 undersigned for all further proceedings. (Court Doc. 28).

16 **FACTUAL BACKGROUND**[1]

17   A single bullet from a hail of gang gunfire behind a family meat market in
Orosi struck one person, the proprietor's 20-year-old son, Jorge López, who bled to
18 death. A jury found Alejandro "Spider" Ramírez, a member of the Original Gangster
Sureños (OGS) criminal street gang, guilty of voluntary manslaughter for the benefit
19 of, at the direction of, or in association with a criminal street gang and guilty of active
participation in a criminal street gang...
20
   Like Spider, Pascual "Shadow" Rúa, José "Silent" Gonzáles, and Jesús
21 "Snoopy" Urtíz were OGS members. Though not a member himself, Orlando "Little
One" Rúa hung with OGS members. A few hours before the homicide, Silent showed
22 Little One and Shadow a loaded revolver in his pants pocket around the time when,

---

[1] These facts are derived from the California Court of Appeal's opinion issued on November 13, 2006. (*See* Lod. Doc. 4). Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996, a determination of fact by the state court is presumed to be correct unless Petitioner rebuts that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); *see also Sanders v. Lamarque*, 357 F.3d 943, 948 (9th Cir. 2004). Here, Petitioner has not presented evidence that would permit the Court to set aside the presumption of correctness that has attached to the State court's factual findings.

elsewhere, Snoopy loaded a gun with flat-nose bullets.[2]

Not long afterward, Shadow, Silent, Snoopy, and fellow OGS member Erick Barriga went to Spider's home for a backyard barbecue. Little One drove Shadow and Silent to the barbecue in Shadow's Lincoln and saw Silent and Spider there with a gun. Among the OGS members at Spider's barbecue were Miguel Angel "Marro" Huerta, Samuel "Tumbado" Vásquez, Héctor "Troll" Camarena, Andrés "Flaco" García, Juan "Yogi" Hernández, and Little One's and Shadow's brother Rolando "Smiley" Rúa.

While OGS members congregated at Spider's barbecue, Jorge cooked meat for family and friends at a barbecue behind Carnicería López, his father's meat market. Even though he was not a gang member himself, Jorge hung at school with members of Brown Pride Catella (BPC), a Norteño criminal street gang, but outside school he was too busy to do that because he worked all the time for his father at the Carnicería. As Jorge and his friend Jesús "Chui" Lozano waited for the coals to cool, blue-shirted Smiley approached and dogged them. Just looking at someone who is dogging can be dangerous, so Chui and Jorge turned away.

After Smiley left, red-shirted Arnulfo "Junior" Ildefonso dropped by. After seeing his brothers Luis Miguel "Mike" Ildefonso and Norberto "Beto" Ildefonso with César Yáñez at the K & K Market, Junior headed there with Jorge and his friends, but everyone ended up talking in the alley between the two markets. As Jorge and his friends were about to walk back to the Carnicería, Smiley dogged them again and threw gang signs. Jorge put his hands up and yelled, "What's his problem?" or "What's your problem?" Smiley called him a "buster," short for "sod buster," a derogatory Sureño term that characterizes Norteños as uneducated Central Valley farmers. Jorge voiced a derogatory and profane retort.

Although Smiley was alone, Chui feared gang members could "come out of nowhere" and jump them, so he told Jorge, "Let's go." Jorge and his friends walked back to the Carnicería to hang there with him. As if preparing to fight, Jorge took off his chains and his watch and put down his cell phone.

Meanwhile, the talk at Spider's barbecue was about "busters tripping in the alley" behind K & K Market. In gang slang, "tripping" is challenging someone. Spider said they were "gonna go fight." Everybody got "excited." Snoopy and Spider both said, "Let's go." After Erick put a gun into his pocket, Flaco drove him, Marro, Snoopy, and others in his van. Yogi took others in his Taurus. Shadow took yet others in his Lincoln.

On the way to the Carnicería, Shadow parked his Lincoln by the K & K Market and stepped outside briefly with Marro and others. Flaco and Yogi arrived at the Carnicería together and drove around as the passengers in both vehicles were "staring, staring, staring" at Jorge and his friends. Once Shadow arrived in his Lincoln, all three vehicles drove around together.

After the van parked in the alley, Chui said to Jorge, "Let's go ." Spider, Tumbado, and others jumped out of the van. Tumbado threw gang signs and yelled "buster" and "chapetes." "Chapete" is gang slang for a country bumpkin who "doesn't

---

[2] Initial references are by first and last names and, if applicable, by nicknames. Subsequent references in the factual history are to nicknames, if applicable, or to first names, if not. Subsequent references elsewhere in the opinion are to last names only.

really get it." Spider yelled "chapetes," "leves," "south side," and "sur trece." "Leve" is gang slang for low life, rat, or worthless human. "Sur" and "trece" are Spanish for "south" and "13." Chui saw something that looked like a gun handle in Snoopy's waistband.

Jorge yelled to Chui, "[B]ack me up." Beto, César, and Mike picked up partly burnt branches that were about a foot-and-one-half long and three to four inches in diameter. Jorge looked at Spider and said, "One on one. One on one." OGS members differed with Jorge's father and friends as to whether Jorge had a knife in his hand.

Moments after Snoopy briefly pointed a gun at Jorge, Marro and a dozen or so other young males ran through the alley to the market yelling and throwing beer bottles. As Jorge and his friends dodged the beer bottles, gunfire from two, three, or four guns rang out. Witnesses saw Marro pointing a gun at Jorge and saw Tumbado firing a gun at Jorge.

The cause of Jorge's death was exsanguination from a single gunshot wound to the chest. The blunt bullet the pathologist recovered from his chest was designed not to pass through the body, but to stay inside the body, to release as much kinetic energy as possible inside the body and to cause as much damage as possible to the body.

(Lod. Doc. 3, Opinion of the California Court of Appeal, Fifth Appellate District, at 1-4).

## DISCUSSION

**I.    Jurisdiction**

A person in custody pursuant to the judgment of a state court may petition a district court for relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); *Williams v. Taylor*, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. Petitioner is currently incarcerated in Sierra Conservation Center[3] and Petitioner's custody arose from a conviction in the Tulare County Superior Court. (Pet. at 2). As both Tulare and Tuolumne County falls within this judicial district, 28 U.S.C. § 84(b), the Court has jurisdiction over Petitioner's application for writ of habeas corpus. *See* 28 U.S.C. § 2241(d) (vesting concurrent jurisdiction over application for writ of habeas corpus to the district court where the petitioner is currently in custody or the district court in which a State court convicted and sentenced Petitioner if the State "contains two or more Federal judicial districts").

\\\

---

[3] Sierra Conservation Center is located in Jamestown, California. Jamestown falls within the territorial boundaries of Tuolomne County.

**II.     ADEPA Standard of Review**

On April 24, 1996, Congress enacted the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for a writ of habeas corpus filed after the statute's enactment. *Lindh v. Murphy*, 521 U.S. 320, 326-327 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied*, 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by Lindh*, 521 U.S. 320 (holding AEDPA only applicable to cases filed after statute's enactment)). The instant petition was filed in 2008 and is consequently governed by the provisions of the AEDPA, which became effective April 24, 1996. *Lockyer v. Andrade*, 538 U.S. 63, 70 (2003). Thus, the petition "may be granted only if [Petitioner] demonstrates that the state court decision denying relief was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Irons v. Carey*, 505 F.3d 846, 850 (9th Cir. 2007) (quoting 28 U.S.C. § 2254(d)(1)); *see Lockyer*, 538 U.S. at 70-71.

As Petitioner is in custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment, 28 U.S.C. § 2254 remains the exclusive vehicle for Petitioner's habeas petition. *Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1126-1127 (9th Cir. 2006) (quoting *White v. Lambert*, 370 F.3d 1002, 1006 (9th Cir. 2004) in holding that, "[s]ection 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petitioner is not challenging his underlying state court conviction'").

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" *Lockyer*, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id*. (quoting *Williams*, 592 U.S. at 412). "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Id*. Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." *Lockyer*, 538 U.S. at 72, (quoting 28

U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413; *see also Lockyer*, 538 U.S. at 72. "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.  A federal habeas court making the "unreasonable application" inquiry should ask whether the State court's application of clearly established federal law was "objectively unreasonable." *Id*. at 409.

Petitioner bears the burden of establishing that the state court's decision is contrary to or involved an unreasonable application of United States Supreme Court precedent. *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. *See Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003); *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999).  Furthermore, AEDPA requires that we give considerable deference to state court decisions.  The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1).  We are bound by a state's interpretation of its own laws. *Souch v. Schaivo*, 289 F.3d 616, 621 (9th Cir. 2002).

The initial step in applying AEDPA's standards requires a federal habeas court to "identify the state court decision that is appropriate for our review." *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005).  Where more than one State court has adjudicated Petitioner's claims, the Court analyzes the last reasoned decision. *Id*. (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) for the presumption that later unexplained orders, upholding a judgment or rejecting the same claim, rests upon the same ground as the prior order).  Thus, a federal habeas court looks through ambiguous or unexplained state court decisions to the last reasoned decision in order to determine whether that

decision was contrary to or an unreasonable application of clearly established federal law. *Bailey v. Rae*, 339 F.3d 1107, 1112-1113 (9th Cir. 2003). Here, the California Court of Appeal and the California Supreme Court were the only courts to have adjudicated Petitioner's claims. (*See* Lod. Docs. 3, 5, 7). As the California Supreme Court summarily denied Petitioner's claims that were raised in his petition for writ of habeas corpus and petition for review, the Court looks through those decisions to the last reasoned decision; namely, that of the California Court of Appeal. *See Ylst v. Nunnemaker*, 501 U.S. at 804.

### III.   Review of Petitioner's Claims

Petitioner presents four claims for relief in his petition for writ of habeas corpus: (1) the admission of hearsay statements was a violation of his Confrontation Clause rights; (2) ineffective assistance of trial counsel;(3) the jury was incorrectly instructed when the trial court issued California Jury Instructions Criminal ("CALJIC") No. 3.02; and (4) the trial court violated his constitutional right to due process of the law by issuing CALJIC No. 3.02. (Pet. at 6-9).

#### A.   Ground One: Confrontation Clause and Equal Protection

Petitioner contends that his Confrontation Clause rights were violated by the trial court's admission of hearsay testimony by the gang expert and by the admission of certified copies of other gang member's convictions. (Pet. Mem. P. & A. at 5-9). In a subpart to this ground for relief, Petitioner also contends that his equal protection rights were violated. (Id. at 9-11).

##### 1.   Confrontation Clause

The Confrontation Clause protects a defendant from unreliable hearsay evidence being presented against him during trial. *See* U.S. Constitution, Amendment VI. The Confrontation Clause of the Sixth Amendment specifically provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." *Id.* The Sixth Amendment's Confrontation Clause was made applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Pointer v. Texas*, 380 U.S. 400, 403-05 (1965). In *Crawford v. Washington*, 541 U.S. 36, 59 (2004), the United States Supreme Court held that the Confrontation Clause bars the state from introducing out-of-court statements which are testimonial in nature, unless "the declarant is unavailable, and only where the defendant has had a prior opportunity to

cross-examine." The *Crawford* court categorically rejected statements, which were otherwise deemed to be reliable, as exceptions to the Confrontation Clause, reasoning that "dispensing with confrontation because testimony is obviously reliable is akin to dispensing with a jury because a defendant is obviously guilty. This is not what the Sixth Amendment proscribes." *Id.* at 62.

Here, the Court finds that the State court's denial of Petitioner's Confrontation Clause claim was not unreasonable as clearly established federal law does not lead to the conclusion that Petitioner's rights were violated. As noted by the State court, the statements by Detective Aguilar were admitted for the purpose of explaining the basis of his expert opinion that OGS was a criminal street gang. (Lod. Doc. 3 at 6-7; RT at 2173-2183). As a basis for this opinion, Detective Aguilar explained that members of OGS participated in a pattern of criminal gang activity, information that was obtained from hearsay sources. (Id. at 2176-2183). As noted by Petitioner himself, the information attested to by Detective Aguilar pertained to his expert opinion and the basis for that opinion, as Petitioner readily admits that his objection was to "the introduction of 'testimonial' hearsay *as a basis for a opinion of the prosecution's gang expert* regarding the predicate offense element." (Pet. at 3) (emphasis added).

The Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Crawford*, 541 U.S. at 59 n. 9 (citing *Tennessee v. Street*, 471 U.S. 409, 414 (1985)); *see Moses v. Payne*, 555 F.3d 742, 755 (9th Cir. 2009). In *Moses*, the Ninth Circuit found that the admission of the out of court statement made by Petitioner's son to a social worker did not violate the Confrontation Clause as the statement was admitted to explain why the social worker called Child Protective Services. Additionally, the Federal Rules of Evidence permit testimony by an expert even where the expert's opinion is based on inadmissible hearsay evidence as long as the evidence is of a kind exerts in the field regularly consult. Fed.R.Evid. 703; *see United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000) (holding that police officer possessing years of experience and special knowledge of gangs may qualify as expert witnesses); *see also United States v. Steed*, 548 F.3d 961, 976 n. 13 (11th Cir. 2008) (noting that there exists no Supreme Court precedent pertaining to an expert witness' reliance on otherwise inadmissible sources); *but cf. United States v. Mejia*, 545 F.3d 179, 197 (2nd Cir. 2008) (noting that a police

expert's testimony explaining the inadmissible evidence he relied upon in reaching his conclusion may implicate the Confrontation Clause where the expert "simply transmit[s] that hearsay to the jury").

Petitioner additionally argues that his Confrontation Clause rights were violated by the admission of certified records of the prior convictions pertaining to the predicate offenses Detective Aguilar relied upon in forming his expert opinion.[4]  As noted previously, the Supreme Court in *Crawford*, 541 U.S. at 68, found that the admission of testimonial evidence violates a defendant's Confrontation Clause rights where the witness is unavailable and was not previously subject to cross examination by the defendant.  The *Supreme Court in Davis v. Washington*, 547 U.S. 813, 821 (2006) further clarified that "[i]t is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause."  The *Davis* court defined the contours of what constitutes testimonial statements, finding that a statement is testimonial "when the circumstances objectively indicate that ... the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Id*. at 822.  The *Davis* court found statements made by a woman to a 911 operator reporting she had been assaulted was non-testimonial as the objective circumstances indicated "that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency" and was thus not subject to the Confrontation Clause.  *Id*. at 822.  The Supreme Court further defined the contours of what constitutes testimonial evidence in *Melendez-Diaz v. Massachusetts,* 129 S.Ct. 2527 (2009).  The *Melendez-Diaz* court found that a certificate of analysis testing a substance for cocaine constituted testimonial evidence as the certificates were "quite plainly affidavits...functionally identical to live, in court testimony, doing 'precisely what a witness does on

---

[4]Petitioner also seems to posits that the admission of evidence pertaining to the predicate offenses constituted improper character evidence. (Pet. Mem. P. & A. at 8-9).  The Court finds such an argument misguided as the predicate offenses were not committed by Petitioner and thus would not be evidence of Petitioner's character.  Even if the evidence could be considered evidence of Petitioner's character, this claim could not provide a basis for habeas corpus relief as the Supreme Court has reserved the question of whether a trial court's admission of propensity evidence violates the Due Process Clause.  *See Alberni v. McDaniel*, 458 F.3d 860, 863-867 (9th Cir. 2006)(citing *Estelle v. McGuire*, 502 U.S. 62, 75 n. 5 (1991)).  Thus, a determination by he California Court of Appeal that the admission of character evidence to show propensity did not violate Petitioner's right to due process could not be contrary to nor an unreasonable application of clearly established federal law.  *Mejia v. Garcia,* 534 F.3d 1036, 1946 (9th Cir. 2008).  Accordingly, Petitioner would not be entitled to relief under section 2254. 28 U.S.C. § 2254(d).

direct examination.'" *Id*. at 2532 (quoting *Davis*, 547 U.S. at 830).  The Court noted that the affidavits's testimonial nature were due to the primary purpose of the statements, which were"'made under circumstances which would lead an objective witness reasonably to believe that the statements would be available for use at a later trial.'" *Id*. (quoting *Crawford*, 541 U.S. at 52).  Here, the Court finds that the certified judgement of convictions pertaining to the predicate offenses were not testimonial pursuant to the tests laid out in *Crawford* and its progeny.  It would be abundantly clear to any objective witness that the judgements in question were not prepared for use at a later trial.  *See Vega v. Clark*, 2010 WL 1024589 * 21 n. 7 (C.D. Cal. 2010) (finding that "[t]he admission of the certified judgment of conviction was also not violative of *Crawford*" as the certified abstract of judgments were clearly not prepared for use at Petitioner's trial).  Thus, the judgements were not comparable to the certificate of analysis found to be testimonial in *Melendez-Diaz*.

## 2. *Equal Protection*

Petitioner contends that the State violated his right to equal protection of the laws by permitting the use of the terms "Nortenos" "Surenos" and "Mexican Mafia," which injected racial prejudice into the trial.  (Pet. Mem. P. & A. at 9-10).  As noted by the Respondent, the California Supreme Court issued the only decision addressing Petitioner's claim as it was only raised before the California Supreme Court.  (Answer at 18).  As the California Supreme Court summarily denied the claim, there does not exist a reasoned decision issued by the State courts on this claim.  Thus, the Court must conduct an independent review of the record to determine whether the State court's summary denial was objectively unreasonable.  *See Musladin v. Lamarque*, 555 F.3d 830, 835 (9th Cir. 2009); *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003) (quoting *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000)).

"The equal protection clause directs that 'all persons similarly circumstanced shall be treated alike.'"  *Mayner v. Callahan*, 873 F.2d 1300, 1301 (9th Cir. 1989) (citing *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920)).  Petitioner is correct that "[s]everal circuits have recognized that a defendant's constitutional rights may be violated by a trial infected with racial prejudice." *United States v. Santiago*, 46 F.3d 885, 890 (9th Cir. 1995) (listing cases).  Clearly established federal law prohibits a prosecutor from presenting racially based prosecutorial arguments as such

arguments may violate a defendant's rights to equal protection and due process of the law. *McCleskey v. Kemp,* 481 U.S. 279, 309 n. 30 (1987); *see Bains v. Cambra*, 204 F.3d 964, 974 (9th Cir. 2000) (finding constitutional violation where prosecutorial arguments "went beyond merely providing evidence of motive and intent...and that invited the jury to give in to their prejudices and to buy into the various stereotypes that the prosecutor was promoting"); *see also United States v. Cabrera*, 222 F.3d 590, 594 (9th Cir. 2000) (stating, "[a]ppeals to racial, ethnic, or religious prejudice during the course of a trial violate a defendant's Fifth Amendment right to a fair trial"). In *Cabrera*, the Ninth Circuit found that improper testimony by a witness appealing to racial, ethnic, or religious prejudice also violates a defendant's constitutional rights. *See Cabrera*, 222 F.3d at 596 (finding police officer's testimony, that repeatedly referenced defendants' Cuban origin and in which officer made generalizations about Cubans' drug activities, impermissibly prejudiced defendants). As noted by the Ninth Circuit in *Santiago*, "the core concern is whether 'the argument shifts its emphasis from evidence to emotion'" in determining whether the trial has been impermissibly infected with racial prejudice. *Santiago*, 46 F.3d at 891 (quoting *United States v. Doe*, 903 F.2d 16, 25 (D.C. Cir. 1990)). Where the testimony "overall, was a 'dispassionate and intelligent presentation of the evidence,' the relevant use of a racial term is less likely to prejudice the outcome." *Id*. (quoting *United States v. Hernandez*, 865 F.2d 925, 927-28 (7th Cir. 1989)).

Here, none of the references to the terms Nortenos, Surenos, and Mexican Mafia that Petitioner points to were appeals by the prosecutor or by the gang expert to racial, ethnic, or religious prejudice. Rather, the Court finds that the references were "for ambiguous reasons amidst an overall dispassionate and intelligent presentation" and is thus not "sufficiently prejudicial so as to constitute an equal protection violation." *Bains*, 204 F.3d at 975.

### B.     Ground Two: Ineffective Assistance of Counsel

Petitioner contends that his Sixth Amendment right to counsel was violated by trial counsel's failure to request and secure a limiting instruction regarding the admission of gang evidence. (Pet. Mem. P. & A. at 13-18).

\\\

\\\

1 An allegation of ineffective assistance of counsel requires that a petitioner establish two elements–(1) counsel's performance was deficient and (2) petitioner was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687(1984); *Lowry v. Lewis*, 21 F.3d 344, 346 (9th Cir. 1994). Under the first element, the petitioner must establish that counsel's representation fell below an objective standard of reasonableness, specifically identifying alleged acts or omissions which did not fall within reasonable professional judgment considering the circumstances. *Strickland*, 466 U.S. at 688; *United States v. Quintero-Barraza*, 78 F.3d 1344, 1348 (9th Cir. 1995). Judicial scrutiny of counsel's performance is highly deferential and there exists a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 687; *Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994).

Second, the petitioner must show that counsel's errors were so egregious that the petitioner was deprived of the right to a fair trial, namely a trial whose result is reliable. *Strickland*, 466 U.S. at 687. To prevail on the second element, the petitioner bears the burden of establishing that there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Quintero-Barraza*, 78 F.3d at 1348 (quoting *Strickland*, 466 U.S. at 694). A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. *Strickland*, 466 U.S. at 697. Since prejudice is a prerequisite to a successful claim of ineffective assistance of counsel, any deficiency that was not sufficiently prejudicial to the petitioner's case is fatal to an ineffective assistance of counsel claim. *Id*.

Petitioner contends that counsel's "failure to request proper limitations limiting [sic] instructions allowed the jury to consider several significant pieces of evidence for an improper purpose," constitutes prejudice as those pieces of evidence–namely the expert testimony of Detective Aguilar and the admission of the judgements pertaining to the predicate crimes–"gave the appearance that Petitioner was implicated in the commission of those crimes." (Pet. Mem. P. & A. at 16-17). The Court notes that Petitioner fails to assert with any specificity the content of the limiting instruction Petitioner faults counsel for not requesting. Regardless, Petitioner's contention is

unavailing.  The California Court of Appeal found that the testimony of the gang expert regarding the five predicate crimes by member of the Sureno criminal street gang "did not implicate [Petitioner] in the commission of any of those crimes."  (Lod. Doc. 3 at 8).  Likewise, the Court's review of the record reveals that neither Detective Aguilar's testimony nor the judgements pertaining to the predicate offenses implicated Petitioner in those crimes.  (RT at 2177-2183).  Consequently, there is not a reasonable probability that counsel's failure to request a limiting instruction prejudiced the verdict against Petitioner.

### C. Ground Three: Erroneous Jury Instruction

Petitioner contends that the "jury was incorrectly instructed...that Petitioner could be convicted of voluntary manslaughter as the natural and probable consequence of aiding and abetting a misdemeanor breach of the peace" and that this incorrect jury instruction violated his constitutional right to due process of the law as the instruction "was highly confusing and misleading." (Pet. at 7-8).

Generally, claims based on instructional error under state law are not cognizable on habeas corpus review. *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991) (citing *Marshall v. Lonberger*, 459 U.S. 422, 438 n. 6 (1983)).   To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the error so infected the entire trial that the resulting conviction violates due process.  *Estelle*, 502 U.S. at 72; *see Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) (quoting *Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973) in finding that a habeas court must not merely consider whether an "instruction is undesirable, erroneous, or even universally condemned" but must instead determine"'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process'").  An erroneous jury instruction "directed toward an element of the offense may rise to the level of a constitutional defect." *Byrd*, 566 F.3d at 862 (citing *Neder v. United States*, 527 U.S. 1, 9-10 (1999)).  "Due process requires that jury instructions in criminal trials give effect to the prosecutor's burden of proving every element of the crime charged beyond a reasonable doubt. [Citation] 'Nonetheless, not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation.'" *Townsend v. Knowles*, 562 F.3d 1200, 1209 (9th Cir. 2009) (quoting *Middleton v. McNeil*, 541 U.S. 433, 437 (2004) (per curiam)).

Additionally, "[t]he jury instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record." *Id*. (citation and internal quotation marks omitted). "If the charge as a whole is ambiguous, the question is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution." *Middleton*, 541 U.S. at 437.

Petitioner is challenging the issuance of a modified version of CALCRIM No. 3.02, claiming that the instruction permitted a jury to convict him of voluntary manslaughter based on a theory that he aided and abetted a misdemeanor breach of peace. (Pet. Mem. P. & A. at 20). The modified version of CALCRIM No. 3.02 states:

> One who aids and abets another in the commission of a crime is not only guilty of that crime, but is also guilty of any crime committed by a principal which is a natural and probable consequence of the crime originally aided and abetted.
> In order to find the defendant guilty of the crimes of murder, as charged in Count 1, on the theory of aiding the abetting liability for the natural and probable consequences, you must be satisfied beyond a reasonable doubt that:
>   1. One of the crimes of
>       a. Assault, Penal Code Section 240
>       b. Breach of Peace, Penal Code Section 415
>       c. Assault by Means Likely to Produce Great Bodily Injury, Penal Code Section 245(a)(1)
>   2. That the defendant aided and abetted that crime;
>   3. That a co-principal in that crime committed the crime of
>       a. Assault, Penal Code Section 240
>       b. Breach of Peace, Penal Code Section 415
>       c. Assault by Means Likely to Produce Great Bodily Injury, Penal Code Section 245(a)(1);
>   4. The crime murder was a natural and probable consequence of the commission of the commission of one of the crimes,
>       a. Assault, Penal Code Section 240
>       b. Breach of Peace, Penal Code Section 415
>       c. Assault by Means Likely to Produce Great Bodily Injury, Penal Code Section 245(a)(1);
> In determining whether a consequence is "natural and probable," you must apply an objective test, based not on what the defendant actually intended, but on what a person of reasonable and ordinary prudence would have expected likely to occur. The issue is to be decided in light of all of the circumstances surrounding the incident.
> A "natural" consequence is one which is within the normal range of outcomes that may be reasonably expected to occur if nothing unusual has intervened.
> "Probable" means likely to happen. You are not required to unanimously agree as to which originally contemplated crime the defendants aided and abetted, so long as you are satisfied beyond a reasonable doubt and unanimously agreed that the defendants aided and abetted the commission and identified in the identifying target crime, and that the crime of murder was a natural and probable consequence of the commission of that target crime....

(CT at 541-542; RT at 2686-2688).

Petitioner appears to be arguing that the misdemeanor breach of peace could not support a murder conviction under the natural and probable cause doctrine, because "killings which occur in the commission of a misdemeanor breach of the peace are subject to the misdemeanor-manslaughter rule."[5]  (Pet. Mem. P. & A. at 23).  Consequently, Petitioner contends that a misdemeanor breach of peace would at most support a conviction of involuntary manslaughter.[6]  (Id. at 24-27).

The California Court of Appeal rejected this argument, finding that :

> The natural and probable consequences doctrine dooms Ramírez's argument. Despite academic criticism, the natural and probable consequences doctrine remains an " 'established rule' " of American jurisprudence holding aiders and abettors " 'responsible for the criminal harms they have naturally, probably and foreseeably put in motion.' " ([*People v. Prettyman*, 14 Cal.4th 248, 260 (Cal. 1996)], quoting *People v. Luparello* (1986) 187 Cal.App.3d 410, 439.) An aider and abettor " 'is guilty not only of the offense he intended to facilitate or encourage, but also of any reasonably foreseeable offense committed by the person he aids and abets,' " so that one " 'whose liability is predicated on his status as an aider and abettor need not have intended to encourage or facilitate the particular offense ultimately committed by the perpetrator.' " (*Prettyman*, supra, 14 Cal.4th at p. 261, quoting *People v. Croy* (1985) 41 Cal.3d 1, 12, fn. 5, impliedly overruled on another ground by *People v. Dyer* (1988) 45 Cal.3d 26, 60-64, as stated by *People v. Sarkis* (1990) 222 Cal.App.3d 23, 26.)
>
> The scope of the doctrine is not without limits, of course. There must be a close connection between the target crime aided and abetted and the offense actually committed for the doctrine to apply. (*Prettyman*, supra, 14 Cal.4th at p. 269.) In addition, an aider and abettor rarely, if ever, is liable for the commission of a very serious crime that his or her confederate commits where the target offense he or she contemplated by his or her aiding and abetting is trivial. ( Ibid.) In the context of a bitter rivalry involving gang members willing to fight to the death over territory, however, the target offense of breach of the peace for fighting in public is not the least bit trivial. [*People v. Montes,* 74 Cal.App.4th 1050, 1055 (Cal. Ct. App. 1999)].  We reject Ramírez's argument.

(Lod. Doc. 3 at 15).

\\\

\\\

---

[5] As noted by Respondent, Petitioner incorporates this section of his petition from the appellate brief of his co-defendant Samuel Vasquez.

[6] In response to this claim, Respondent misguidedly cites to section 3 of the California Court of Appeal's decision, which pertains to Petitioner's argument that the jury instruction was erroneous as it permitted a manslaughter verdict based on an infraction breach of peace charge as opposed to a misdemeanor breach of peace. (Answer at 25-29; Lod. Doc. 3 at -12). This argument was not raised in the appeal. The pertinent section of the California Court of Appeal's decision for the purposes of this argument is actually section 5. (*See* Lod. Doc. 3 at 14-15).

1    Petitioner's argument is based on an interpretation of State law that was rejected by the
2    California Court of Appeal.  As "it is not the province of a federal habeas court to reexamine
3    state-court determinations on state-law questions," this argument does not entitle Petitioner to habeas
4    corpus relief.  *See Estelle v. McGuire*, 502 U.S. at 67-68; *see also Bradshaw v. Richey*, 546 U.S. 74,
5    76 (2005) (per curiam) (stating "a state court's interpretation of state law, including one announced
6    on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus").  This is
7    especially true as the Ninth Circuit Court of Appeals has found that California's natural and probable
8    consequences doctrine does not violate due process.  *See Spivey v. Rocha*, 194 F.3d 971, 976-77 (9th
9    Cir. 1999) (finding that misdemeanor can support a "natural and probable consequences" aiding and
10   abetting murder conviction); *see also San Nicolas v. Dexter*, 2009 WL 1651621, * 21 (C.D. Cal.
11   2009).

### D.    Ground Four: Erroneous Jury Instruction

In a related contention, Petitioner argues that the modified version of CALCRIM No. 3.02 was "highly confusing and misleading."

As the Court has previously noted, "not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation.  The question is whether the ailing instruction so infected the entire trial that the resulting conviction violates due process." *Middleton*, 541 U.S. at 437.  Petitioner contends that "[t]he jumbled version given here gave conflicting indications as to whether the target crime needed to have been committed at all and by whom, and did not require a finding that a co-principal had committed an offense other than the target crime." (Pet. Mem. P. & A. at 42).

The California Court of Appeal found only one cogent argument existed regarding instructional error–namely, that the trial "court's modification of the standard instruction allowed the jury to find Ramírez guilty of murder only if the jury were to find that a co-principal committed one of the target offenses." (Lod. Doc. 3 at  ).  The Court finds the appellate court's summary denial of Petitioner's argument, that the instruction did not mandate that a target crime needed to have been committed, reasonable.  The preface of CALCRIM No. 3.02 makes clear that a target crime was

required to have been committed as "[o]ne who aids and abets another in *the commission of crime* [sic] is not only guilty of *that crime*, but is also guilty of *any crime* committed by a principal which is a natural ad probable consequence of *the crime originally aided and abetted*." (RT at 2686; CT at 543) (emphasis added). Thus, the failure to explicitly require that the jury find that a target offense had been committed later in the instruction did not so infect the trial that the resulting conviction violates due process.

Likewise, the appellate court found that the trial court committed error in not explicitly instructing the jury that they were required to find that the co-principal committed murder or manslaughter. However, the State court found this error was harmless as "[i]mplicit in the verdicts finding Ramírez not guilty of murder but guilty of voluntary manslaughter is the jury's understanding that he could be criminally liable only for an offense that a co-principal committed and that was the natural and probable consequence of a target offense Ramírez aided and abetted." (Lod. Doc. 3 at 14). The Court finds the California Court of Appeal's analysis to be objectively reasonable as the jury's finding that Petitioner was guilty of voluntary manslaughter reflects an understanding that Petitioner could only be liable for the substantive offense committed by his co-principal. Thus, Petitioner is not entitled to relief on this ground.

### E.   *Ground Five: Trial Court's Denial of Stay for Gang Enhancement or Crime*

Lastly, Petitioner contends the trial court should have stayed either his sentence for participating in a criminal street gang crime or the criminal street gang enhancement.[7] Petitioner's argument is based on California Penal Code section 654(a), which states in relevant part that, "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." Thus, Petitioner argues that as the substantive offense and the enhancement proscribe the same conduct, one of the sentences should have been stayed pursuant to California Penal Code section 654(a).

---

[7] This claim was not identified in the petition but was extensively addressed in the memorandum of points and authorities attached to the petition. Thus, while Respondent does not address this argument, the Court finds it is still proper for a merits adjudication.

1    The Court finds that Petitioner is not entitled to habeas corpus relief on this claim.  In order
2 to obtain habeas corpus relief,  Petitioner must demonstrate that the adjudication of his claim in state
3 court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly
4 established Federal law" and that Petitioner is "in custody in violation of the Constitution." 28
5 U.S.C. § 2254.  Here, Petitioner fails to establish a violation of the Constitution or federal law as his
6 claim is based entirely on the interpretation and application of state law.  As noted previously, issues
7 of state law are not cognizable on federal habeas as"'federal habeas corpus relief does not lie for
8 errors of state law.'"  *Estelle v. McGuire*, 502 U.S. at 67 (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780
9 (1990)).  More importantly, federal courts defer to a state court's interpretation of its sentencing
10 laws.  *Id*. at 67-68; *Bueno v. Hallahan*, 988 F.2d 86, 88 (9th Cir. 1993). Thus, absent a showing of
11 fundamental unfairness, the state court's application of its own sentencing laws does not give rise to
12 federal habeas relief.  *Christian v. Rhode*, 41 F.3d 461, 469 (9th Cir. 1994).

   In rejecting Petitioner's claim, the California Court of Appeal found that it was proper under
state law to deny the stay, as:

> " 'Whether a course of criminal conduct is divisible and therefore gives rise to more
> than one act within the meaning of section 654 depends on the intent and objective of
> the actor. If all of the offenses were incident to one objective, the defendant may be
> punished ... not for more than one [of the offenses].' [Citation.]"( *People v. Latimer*
> (1993) 5 Cal.4th 1203, 1208, quoting *Neal v. State of California* (1960) 55 Cal.2d 11,
> 19.) Whether the defendant had multiple criminal objectives is a question of fact for
> the trial court that, if supported by substantial evidence, will be upheld on appeal. (
> *People v. Osband* (1996) 13 Cal.4th 622, 730-731.)...
>    The statute authorizing the count 2 criminal street gang crime defines "a
> substantive offense whose gravamen is the participation in the gang itself." ( *People v.
> Herrera (*1999) 70 Cal.App.4th 1456, 1467, fn. omitted; italics in original.) "In
> contrast," the statute authorizing the count 1 criminal street gang enhancement
> "creates additional punishment for anyone who commits a felony for the benefit of, at
> the direction of, or in association with a street gang." ( Id. at p. 1467, fn. 12; italics
> added.) On a record of substantial evidence in support of the court's implicit finding
> that Ramírez had multiple criminal objectives of participation in a gang and
> commission of a violent felony, no section 654 stay is required. ( *People v. Osband*,
> supra, 13 Cal.4th at pp. 730-731; 186.22, subds. (a), (b).)

(Lod. Doc. 3 at 16-17). In light of the analysis undertaken by the appellate court, Petitioner has
failed to establish fundamental unfairness resulted from the sentencing court's imposition of separate
terms for Petitioner's convictions stemming from the voluntary manslaughter committed for benefit

of a criminal street gang and for the active participation in a criminal street gang. Consequently, Petitioner is not entitled to relief on this ground.

## IV.   Certificate of Appealability

A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances. *Miller-El v. Cockrell*, 123 S.Ct. 1029, 1039 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides that a circuit judge or judge may issue a certificate of appealability where "the applicant has made a substantial showing of the denial of a constitutional right." Where the court denies a habeas petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 123 S.Ct. at 1034; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). While the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." *Miller-El*, 123 S.Ct. at 1040. In the present case, the Court finds that reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further. Petitioner has not made the required substantial showing of the denial of a constitutional right. Accordingly, the Court hereby DECLINES to issue a certificate of appealability.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. The Petition for Writ of Habeas Corpus is DENIED with prejudice;

2. The Clerk of Court is DIRECTED to enter judgment; and

3. The Court DECLINES to issue a certificate of appealability.

IT IS SO ORDERED.

**Dated:    April 12, 2010**              /s/ John M. Dixon
                                          UNITED STATES MAGISTRATE JUDGE